# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RASHEED JOEL HILSON, SR., | ) | Case No. CV 20-1179-MWF (JEM) |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| LIEUTENANT I. MIJARES, et al., | ) | |
| Defendants. | ) | |

On February 5, 2020, Rasheed Joel Hilson, Sr. ("Plaintiff"), a state prisoner proceeding pro se, filed a complaint pursuant to 42 U.S.C. § 1983 ("Complaint").

## SCREENING STANDARDS

In accordance with the provisions of the Prison Litigation Reform Act of 1995, the Court must screen the Complaint to determine whether the action: (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1). This screening is governed by the following standards:

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) the plaintiff fails to state a cognizable legal theory; or (2) the plaintiff has alleged insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim on

1  which relief may be granted, allegations of material fact are taken as true and construed in

2  the light most favorable to the plaintiff.  Love v. United States, 915 F.2d 1242, 1245 (9th Cir.

3  1988).  However, "the liberal pleading standard . . . applies only to a plaintiff's factual

4  allegations."  Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989).  "[A] liberal interpretation of

5  a civil rights complaint may not supply essential elements of the claim that were not initially

6  pled."  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

7        Although a complaint "does not need detailed factual allegations" to survive

8  dismissal, a plaintiff must provide "more than mere labels and conclusions, and a formulaic

9  recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly,

10  550 U.S. 544, 555 (2007) (rejecting the traditional "no set of facts" standard set forth in

11  Conley v. Gibson, 355 U.S. 41 (1957)).  The complaint must contain factual allegations

12  sufficient to rise above the "speculative level," Twombly, 550 U.S. at 555, or the merely

13  possible or conceivable.  Id. at 557, 570.

14        Simply put, the complaint must contain "enough facts to state a claim to relief that is

15  plausible on its face."  Twombly, 550 U.S. at 570.  A claim has facial plausibility when the

16  complaint presents enough facts "to draw the reasonable inference that the defendant is

17  liable."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  This standard is not a probability

18  requirement, but "it asks for more than a sheer possibility that a defendant has acted

19  unlawfully."  Id.  A complaint that pleads facts that are merely consistent with liability stops

20  short of the line between possibility and plausibility.  Id.

21        In a pro se civil rights case, the complaint must be construed liberally to afford

22  plaintiff the benefit of any doubt.  Karim-Panahi v. Los Angeles Police Dept, 839 F.2d 621,

23  623 (9th Cir. 1988).  Unless it is clear that the deficiencies in a complaint cannot be cured,

24  pro se litigants are generally entitled to a notice of a complaint's deficiencies and an

25  opportunity to amend prior to the dismissal of an action.  Id. at 623.  Only if it is absolutely

26  clear that the deficiencies cannot be cured by amendment should the complaint be

27  dismissed without leave to amend.  Id.; Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir.

28  2007).

1   After careful review and consideration of the Complaint under the relevant standards

2   and for the reasons discussed below, the Court finds that the Complaint must be

3   **DISMISSED WITH LEAVE TO AMEND.**

4                          **ALLEGATIONS OF THE COMPLAINT**

5   Plaintiff names as Defendants in this action Lieutenant I. Mijares, Correctional Officer

6   M. Im, Correctional Counselor A. Ojeda, Warden E. Jordan, Correctional Officer S. Montes,

7   and Correctional Officer L. Bridgeforth, all of whom are officers at California State Prison-

8   Los Angeles County ("CSP-LAC") and are sued in their individual and official capacities.

9   (Complaint at 3-4.)[1]

10   Plaintiff alleges the following:

11   On or about December 14, 2018, Plaintiff was placed in administrative segregation

12   pending investigation of his role in a conspiracy to harm Defendant Montes.  (Id. at 14.)  On

13   January 4, 2019, Plaintiff was served with a Rules Violation Report ("RVR") (log number

14   6284345) charging him with conspiracy to commit murder ("First RVR").  (Id. at 14-15.)

15   On or about January 30, 2019, Plaintiff was served with another RVR for distribution

16   of a controlled substance (log number 6462044) ("Second RVR").  (Id. at 5, 15.)

17   At the hearing on the Second RVR, Plaintiff was denied witnesses and was not

18   permitted to present evidence, including witness statements.  Plaintiff claims that the First

19   and Second RVRs were based on false testimony and inconclusive evidence for which he

20   had an explanation.  (Id. at 5, 14-18.)

21   When Plaintiff was not provided with the final copy of the Second RVR in a timely

22   manner, he filed an appeal (log number LAC-19-02036) to protest the unexplained delay in

23   receiving the final copy of the RVR ("First Appeal").  (Id. at 5-6.)

24   On or about April 12, 2019, Plaintiff received a CDC Form 695 rejecting his First

25   Appeal "due to the finalization of the disciplinary in question not yet being completed and/or

26   returned to [P]laintiff."  Thus, the appeals coordinator appeared to believe that Plaintiff was

27   ────────────────

28   [1] The Court refers to the pages of the Complaint as numbered by the CM/ECF system.

3

1   attempting to appeal the adjudication of the Second RVR, when he was intending to appeal
2   the delay in receiving the final copy of the Second RVR.  (Id. at 6.)

3        On or about May 19, 2019, Plaintiff resubmitted his First Appeal, as well as two other
4   appeals: log number LAC-19-02731 (appealing the results of the Second RVR) ("Second
5   Appeal") and log number LAC-19-02730 (appealing his transfer to the secured housing unit)
6   ("Third Appeal").  In the same envelope, Plaintiff included supporting documentation.
7   However, the Second Appeal was summarily cancelled and all attachments were discarded.
8   Plaintiff believes the appeals coordinator chose to process the First Appeal as the appeal of
9   the Second RVR, when in fact it was a challenge to the delay in receiving the completed
10  Second RVR.  The appeals coordinator then improperly cancelled the Second Appeal as
11  duplicative, when it should have been processed as the appeal of the Second RVR.  (Id. at
12  6-7.)  Plaintiff also appealed the cancellation of the Second Appeal (log number LAC-19-
13  02902) ("Fourth Appeal").

14       Defendant Ojeda failed to interview Plaintiff in connection with the First Appeal,
15  although it appears she did interview him regarding the Second and Fourth Appeals.
16  During the interview, Ojeda indicated that she did not have the attachments to the Second
17  Appeal.  Plaintiff attempted to mail the missing attachments to Ojeda, but they were
18  returned to him with a notation that the appeal in question already had been ruled on at the
19  second level of review.  Defendant Hicks heard the interview with Ojeda.  (Id. at 7-8.)

20       Plaintiff attempted to include the missing attachments at the third level of review, but
21  they were rejected.  (Id. at 9.)

22       Plaintiff was convicted of the disciplinary charge in the Second RVR and assessed
23  11 months in the secured housing unit ("SHU"), 180 days loss of credits, 10 days
24  confinement to quarters, 1 month mandatory drug testing, and loss of various privileges,
25  including canteen, phone, yard recreation, dayroom, packages, visiting, and contact visiting
26  privileges.  (Id. at 11, 18.)

27       It appears that the SHU term arising from the Second RVR was imposed on May 15,
28  2019.  Plaintiff had been in administrative segregation since December 14, 2018, pending

4

1   resolution of the First RVR.  Plaintiff contends that he should not have been transferred to

2   the SHU, which was at another institution, but should have been allowed to remain in

3   administrative segregation at CSP-LAC because the First RVR was still pending at the time

4   of the transfer.  (Id. at 30, 37-38.)

5           Plaintiff also contends that inaccurate/falsified time cards regarding his prison job

6   were used against him in connection with the Second RVR.  Plaintiff was assigned a job

7   within housing unit D-4.  He reported for duty by checking in with Defendants Montes and

8   Bridgeforth, but they instructed him to return to his cell and never allowed him to work at all.

9   Plaintiff was denied his prison job due to "oppressive discrimination" based on his physical

10  limitations.  (Id. at 22.)  Apparently, part of the evidence against Plaintiff was that he would

11  use the movement afforded him by his prison job to sell drugs to other inmates.  He

12  appears to allege that he never was allowed to work, so the time cards showing he did work

13  were falsified.  (Id. at 13.)

14          Although Plaintiff's allegations are convoluted and confusing, he appears to assert

15  the following claims:[2]

16          Violation of due process rights in connection with the processing and adjudication of

17  the Second RVR and related administrative appeals.  (Id. at 9-10, 18-21.)

18          Violation of equal protection rights based on Defendants Montes and Bridgeforth

19  denying Plaintiff the opportunity to work due to his physical disabilities.  (Id. at 22-26.)

20          Deliberate indifference in violation of the Eighth Amendment based on harm suffered

21  as a result of fabricated time cards, which impaired his ability to defend himself and

22  contributed to his conviction on the Second RVR.  (Id. at 28-29.)

23          Violation of due process rights based on his transfer out of administrative at CSP-

24  LAC to the SHU at another institution while the First RVR was still pending.  (Id. at 30-31.)

25          Plaintiff seeks the following: declaratory relief; monetary damages; injunctive relief in

26  the form of an order directing Warden Jordan to "correct any/all time-cards to represent the

27

28      [2]  To the extent that Plaintiff is attempting to assert any additional claims, they are not set forth
    with sufficient clarity and have not been addressed by the Court.

1  actual activity from 9-14-18 until 12-13-18," requiring all confidential informants to undergo a

2  polygraph examination regarding the disciplinary charges against Plaintiff, and allowing

3  Plaintiff to have contact visits.  (Id. at 32.)

4  **DISCUSSION**

5  **I.    THE OFFICIAL-CAPACITY CLAIMS ARE BARRED BY THE ELEVENTH**

6  **AMENDMENT**

7          All of the named Defendants are California Department of Corrections and

8  Rehabilitation ("CDCR") officers, who are sued in their individual and official capacities.

9  (Complaint at 4-5.)  Plaintiff's claims against Defendants in their official capacities are

10  barred by the Eleventh Amendment.

11          In Will v. Michigan Department of State Police, 491 U.S. 58, 64-66 (1989), the

12  Supreme Court held that states, state agencies, and state officials sued in their official

13  capacities are not persons subject to civil rights suits under 42 U.S.C. § 1983.  The

14  Supreme Court reasoned that a suit against a state official in his or her official capacity is a

15  suit against the official's office, and as such It appears that Plaintiff was found guilty of the

16  disciplinary charge, but it is unclear what penalties were assessed.   is no different from a

17  suit against the State itself, which would be barred by the Eleventh Amendment.  See id.;

18  see also Romano v. Bible, 169 F.3d 1182, 1185 (9th Cir. 1999); Stivers v. Pierce, 71 F.3d

19  732, 749 (9th Cir. 1995).  "[T]he [E]leventh [A]mendment bars actions against state officers

20  sued in their official capacities for past alleged misconduct involving a complainant's

21  federally protected rights, where the nature of the relief sought is retroactive, i.e., money

22  damages . . . ."  Bair v. Krug, 853 F.2d 672, 675 (9th Cir. 1988).  However, the Eleventh

23  Amendment "does not preclude a suit against state officers for prospective relief from an

24  ongoing violation of federal law."  Children's Hospital and Health Ctr. v. Belshe, 188 F.3d

25  1090, 1095 (9th Cir.1999).

26          To overcome the Eleventh Amendment bar on federal jurisdiction over suits by

27  individuals against a State and its instrumentalities, either the State must have consented to

28  waive its sovereign immunity or Congress must have abrogated it; moreover, the State's

6

consent or Congress' intent must be "unequivocally expressed."  <u>See</u> <u>Pennhurst State</u>
<u>School & Hosp. v. Halderman</u>, 465 U.S. 89, 99-100 (1984).  While California has consented
to be sued in its own courts pursuant to the California Tort Claims Act, such consent does
not constitute consent to suit in federal court.  <u>See</u> <u>BV Engineering v. Univ. of Cal., Los</u>
<u>Angeles</u>, 858 F.2d 1394, 1396 (9th Cir. 1988); <u>see also</u> <u>Atascadero State Hosp. v. Scanlon</u>,
473 U.S. 234, 241 (1985) (holding that Art. III, § 5 of the California Constitution did not
constitute a waiver of California's Eleventh Amendment immunity).  Furthermore, Congress
has not abrogated State sovereign immunity against suits under 42 U.S.C. § 1983.

Here, Plaintiff seeks monetary damages and retrospective injunctive relief against
Defendants in their official capacities as CDCR officers.  (Complaint at 32.)  Plaintiff's
official capacity claims against Defendants are tantamount to claims against the State of
California, which are barred by the Eleventh Amendment.  If Plaintiff chooses to file an
amended complaint, he should not sue Defendants in their official capacities.

## II.    THE COMPLAINT FAILS TO STATE AN INDIVIDUAL CAPACITY CLAIM AGAINST WARDEN JORDAN

In a Section 1983 action, a supervisory official cannot be held liable under a theory
of respondeat superior or vicarious liability.  See, e.g., Iqbal, 556 U.S. at 676.  A
supervisor's mere knowledge of the unconstitutional conduct of a subordinate does not
amount to the supervisor's own violation of the Constitution.  See id. at 677 (rejecting this
theory of supervisory liability).  "Absent vicarious liability, each Government official, his or
her title notwithstanding, is only liable for his or her own misconduct."  Id.

Under Section 1983, a supervisor may be liable if a plaintiff demonstrates either: (1)
his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal
connection between the supervisor's wrongful conduct and the constitutional violation.
Edgerly v. City & County of San Francisco, 599 F.3d 946, 961 (9th Cir. 2010); MacKinney v.
Nielsen, 69 F.3d 1002, 1008 (9th Cir. 1995).  Liability also can be established if the
supervisor set in motion a series of acts by others which the actor knows or reasonably
should know would cause others to inflict the constitutional injury.  Johnson, 588 F.2d at

743-44.  However, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."  Ivey, 673 F.2d at 268.  Thus, a high ranking administrator such as the Warden cannot be held liable under Section 1983, absent a showing of personal involvement in the constitutional deprivation, or if there was a sufficient causal connection between the Warden's wrongful conduct and the constitutional violation.  See Redman v. Warden of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991).

Plaintiff's claims against Jordan in his individual capacity are based solely on his supervisory position as Warden of CSP-LAC.  Plaintiff alleges no facts demonstrating that Jordan was personally involved in or individually caused the alleged constitutional deprivations.  Thus, Plaintiff has failed to state a civil rights claim against Jordan in his individual capacity.

If Plaintiff chooses to file an amended complaint, he should not name Jordan as a Defendant unless he can truthfully allege facts demonstrating that Jordan was personally involved in causing the alleged constitutional violations.

**III.  THE COMPLAINT FAILS TO STATE A DUE PROCESS CLAIM**

Plaintiff alleges that his due process rights were violated in connection with the investigation and adjudication of the Second RVR and the processing of his related administrative appeals.  (Complaint at 5-10.)  He also alleges that his due process rights were violated when he was transferred out of administrative segregation at CSP-LAC to the SHU at another institution while the First RVR was still pending.  (Id. at 30.)

Prisoners subjected to disciplinary action are entitled to certain procedural protections under the Due Process Clause, although they are not entitled to the full panoply of rights afforded to criminal defendants.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); see also Superintendent v. Hill, 472 U.S. 445, 455-456 (1985); United States v. Segal, 549 F.2d 1293, 1296-99 (9th Cir. 1977) (prison disciplinary proceedings command the least amount of due process along the prosecution continuum).

Prison disciplinary actions are subject to the following procedural requirements under Wolff: (1) written notice of the charges; (2) a hearing, with at least 24-hours advance notice;

(3) a written statement by the fact finders of the evidence relied on and the reasons for taking disciplinary action; (4) the prisoner's right to call witnesses in his or her defense, if doing so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to prisoners who are illiterate or whose issues are particularly complex. Wolff, 418 U.S. at 556-71.  Prison officials are required to call witnesses requested by the prisoner for a serious rules violation unless the official conducting the hearing denies the request for one of the following reasons: the witness's appearance would endanger him or her, the presiding official determines that the witness has no relevant or additional information, or the witness is unavailable.  Cal. Code Regs., tit. 15, § 3315(e)(1).  The reasons for denial must be documented on the completed RVR.  Cal. Code Regs., tit. 15, § 3315(e)(2).

Plaintiff has failed to state a due process claim based on the facts alleged.

As to the processing of his First and Second Appeals, Plaintiff appears to claim that they were misconstrued and that the Second Appeal was improperly dismissed as duplicative.  However, the record appears to demonstrate that the issues raised by Plaintiff in these appeals (the timeliness as well as the substantive result of the Second RVR) were both addressed during the administrative appeals process.  (See Complaint at 34-36.) Thus, it is unclear how Plaintiff was denied due process under Wolff.

As to the denial of witnesses, Plaintiff has not clearly identified the witnesses who would have testified or demonstrated that the testimony was denied in contravention of the applicable regulations.  Plaintiff also has not attached the completed Second RVR, from which the facts relevant to this claim possibly could be ascertained.  Plaintiff has not demonstrated that the denial of witnesses violated the requirements of Wolff.

As to the SHU term, Plaintiff has failed to demonstrate that it was imposed in violation of Wolff.

Thus, Plaintiff has failed to allege facts sufficient to state a due process claim. Although it appears that amendment may be futile, in light of Plaintiff's pro se status he should be granted leave to amend.

**IV.     THE COMPLAINT FAILS TO STATE AN EQUAL PROTECTION CLAIM**

Plaintiff appears to allege that Defendants violated his right to equal protection by not allowing him to work based on his disability.  (Complaint at 22-25.)

The Fourteenth Amendment's Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike.  City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  A plaintiff can establish an equal protection claim either by showing that he was intentionally discriminated against based on his membership in a protected class, see Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or by showing that similarly situated individuals were intentionally treated differently without a rational basis for the difference in treatment, see Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Engquist v. Oregon Dep't of Agriculture, 553 U.S. 591, 601-02 (2008).

Plaintiff has not alleged facts demonstrating that he is a member of a protected class, as neither prisoners nor persons with disabilities qualify as a protected class for equal protection purposes.  See City of Cleburne, 473 U.S. at 445-46; see also Heller v. Doe by Doe, 509 U.S. 312, 321 (1993); Pierce v. County of Orange, 526 F.3d 1190, 1225 (9th Cir. 2008); Lee, 250 F.3d at 686-88.

Plaintiff also has not alleged facts demonstrating that similarly situated individuals were intentionally treated differently than him without a rational basis for the difference in treatment.

Thus, Plaintiff has failed to allege any facts that would support an equal protection claim.  Although it appears that amendment may be futile, in light of Plaintiff's pro se status he should be granted leave to amend.

**V.     THE COMPLAINT FAILS TO STATE AN EIGHTH AMENDMENT CLAIM**

Although Plaintiff's allegations are unclear, he appears to assert that Defendants Montes and Bridgeforth were deliberately indifferent to Plaintiff's safety when they allegedly falsified his time cards, which undermined his defense and contributed to his conviction on the Second RVR.  (Complaint at 23-25.)

1    "[T]he treatment a prisoner receives in prison and the conditions under which he is

2    confined are subject to scrutiny under the Eighth Amendment."  Helling v. McKinney, 509

3    U.S. 25, 31 (1993); see also Farmer v. Brennan, 511 U.S. 825, 832 (1994).  Although

4    conditions of confinement may be restrictive and harsh, they may not deprive inmates of

5    "the minimal civilized measures of life's necessities."  Rhodes v. Chapman, 452 U.S. 337,

6    347 (1981).  Prison officials must provide prisoners with "food, clothing, shelter, sanitation,

7    medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th

8    Cir.1986), abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995);

9    see also Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Hoptowit v. Ray, 682 F.2d

10   1237, 1246 (9th Cir.1982).  "The circumstances, nature, and duration of a deprivation of [ ]

11   necessities must be considered in determining whether a constitutional violation has

12   occurred."  Johnson, 217 F.3d at 731.

13   Where a prisoner alleges injuries stemming from unsafe conditions of confinement,

14   prison officials may be held liable only if they acted with "deliberate indifference to a

15   substantial risk of serious harm."  Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  The

16   deliberate indifference standard involves an objective and a subjective component.  First,

17   the alleged deprivation must be, in objective terms, "sufficiently serious."  Farmer, 511 U.S.

18   at 834 (citation omitted).  Second, the prison official must "know of and disregard an

19   excessive risk to inmate health or safety."  Id. at 837.  Thus, "a prison official may be held

20   liable under the Eighth Amendment for denying humane conditions of confinement only if

21   he knows that inmates face a substantial risk of harm and disregards that risk by failing to

22   take reasonable measures to abate it."  Farmer, 511 U.S. at 835.

23   Here, Plaintiff has failed to state an Eighth Amendment claim.  His allegations are

24   vague and conclusory, and it is unclear how they implicate the Eighth Amendment.  He has

25   failed to allege facts demonstrating that Defendants acted with deliberate indifference.

26   Plaintiff has failed to allege any facts that would support an Eighth Amendment

27   claim.  Although it appears that amendment may be futile, in light of Plaintiff's pro se status

28   he should be granted leave to amend.

************

For the reasons set forth herein, the Complaint is **DISMISSED WITH LEAVE TO AMEND**.

If Plaintiff desires to pursue this action, he is **ORDERED** to file a First Amended Complaint within **thirty (30) days** of the date of this Order, which remedies the deficiencies discussed above.

If Plaintiff chooses to file a First Amended Complaint, it should: (1) bear the docket number assigned in this case; (2) be labeled "First Amended Complaint"; (3) be filled out exactly in accordance with the directions on the form; and (4) be complete in and of itself without reference to the previous complaints or any other pleading, attachment, or document.  The Clerk is directed to provide Plaintiff with a blank Central District of California civil rights complaint form, which Plaintiff must fill out completely and resubmit.

Plaintiff is advised that he should not assert claims for which he lacks factual and legal support.  Rather, he should only assert a particular claim if he can truthfully allege facts that would demonstrate a constitutional violation under the standards set forth above.

**Plaintiff is admonished that, if he fails to file a First Amended Complaint by the deadline set herein, the Court may recommend that this action be dismissed for failure to prosecute and failure to comply with a Court order.**

DATED: July 13, 2020

_/s/ John E. McDermott_
JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE